**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAYVON RUTHERFORD and REGINALD GALLMAN, | ) |
| Plaintiffs, | ) ) ) ) |
| v. | ) No. 18 CV 10706 |
| | ) (KMK)(AEK) |
| DET. CAMILO R. ANTONINI, Badge No. D111, *et al*, | ) ) Hon. Andrew E. Krause |
| Defendants. | ) ) |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

Pursuant to Federal Rules of Civil Procedure 15(a) and 21, Plaintiffs Rayvon Rutherford and Reginald Gallman submit this memorandum of law, together with the Declaration of Karen A. Newirth, dated January 11, 2021, and exhibits thereto ("Newirth Declaration"), in support of Plaintiff's Motion for Leave to File a Second Amended Complaint.

## PRELIMINARY STATEMENT

In seeking leave to amend their complaint, formerly pro-se Plaintiffs seek leave to clarify and properly plead previously raised claims, add a related claim, and add additional defendant police officers. *See* Newirth Decl. ¶¶ 3-9 and Exh. A.

Allowing amendment of the complaint will promote the interests of justice by ensuring that Plaintiffs are able to fully and fairly litigate their case, which presents serious allegations of civil rights violations by members of the Mount Vernon Police Department (MVPD) who, Plaintiffs contend, routinely engage and have for years engaged in similar civil rights violations. Plaintiffs further contend that this pattern and practice of civil rights violations are and have long been known to, and condoned, by MVPD and the City of Mount Vernon, whose lack of supervision and policy and practice of allowing these violations to occur caused and exacerbated the harm to Plaintiffs. Amendment will not materially delay the case or result in any undue prejudice to the Defendants. Moreover, there can be no claim that the claims presented are futile, or that Plaintiffs have acted in bad faith.

As is set forth more fully below, although the case has been pending for a substantial period of time, during much of that time the case was not proceeding efficiently due to circumstances outside of Plaintiffs' control (and, indeed, outside of the control of defendants and

the Court).  Discovery is not complete nor are any discovery deadlines outstanding.[1]  Moreover, counsel for Plaintiffs have acted expeditiously and in good faith in seeking to amend Plaintiffs' pro se complaint in light of our review of previously disclosed discovery as well as additional new relevant information about the Mount Vernon Police Department and the named defendant officers.

For example, over the past year, news media outlets WNYC and Gothamist have published a number of investigative reports documenting allegations of corruption, abuse, and misconduct by the Mount Vernon Police Department's Narcotics officers, including specific allegations of misconduct by defendants Antonini, Puff, and Fegan.[2]  These reported allegations – which include false arrests, fabrication of evidence, illegal strip and body cavity searches, and brutality – echo and support those made by the Plaintiffs in this case, and are corroborated by recorded statements MVPD officers made to a whistleblower police officer acknowledging this misconduct at a time when those officers did not know they were being recorded by the whistleblower.  These whistleblower tapes were reported by these same media outlets.

---

[1] Magistrate Judge Smith did set some discovery deadlines (*see, e.g.*, 5/22/19 Minute Entry, 7/1/19 Minute Entry) but these deadlines were set before counsel for Plaintiff Rutherford withdrew and before any of the difficulties interposed by the correctional institutions came to pass (*see, e.g.*, 3/2/20 Minute Entry, ordering Watertown Correctional Facility to permit correspondence between Plaintiffs).  Magistrate Judge Smith's last order on July 28, 2020 stayed discovery, which was then still pending.  (7/28/2020 Minute Entry).  On information and belief, no scheduling order was ever set by Magistrate Judge Smith.

[2] *See, e.g.,* George Joseph*, "*Corruption and Brutality Allegations Against Mount Vernon Detective Are Echoed by Civilian Complaints", GOTHAMIST, March 11, 2020, https://gothamist.com/news/corruption-and-brutality-allegations-against-mount-vernon-detective-are-echoed-civilian-complaints; *see* George Joseph, "The Mount Vernon Police Tapes:  In Secretly Recorded Calls, Officers Allege Beatings in Custody and Illegal Strip Searches," GOTHAMIST, Sept. 1, 2020, https://gothamist.com/news/mount-vernon-police-tapes-secretly-recorded-calls-officers-allege-beatings-custody-and-illegal-strip-searches.

These news reports and audio recordings support the conclusion that the violations alleged in this case are part of an extensive pattern of similar civil rights violations that were known, or should have been known, to the City of Mount Vernon, and that the City's failure to take appropriate action in response to these ongoing civil rights violations resulted in, and exacerbated, the violations and injuries alleged here. *See, e.g.,* Exh. A at ¶¶ 75-110.

In light of these factual developments, the entry of counsel into the case, and the value to the court and litigants in having a properly pleaded complaint that sets forth viable causes of action, amendment of the complaint should be allowed as in the interests of justice.

### RELEVANT FACTUAL BACKGROUND

On November 13, 2018, then-pro se plaintiffs Rayvon Rutherford and Reginald Gallman filed a civil rights complaint alleging that, during the execution of a search warrant, the Plaintiffs were illegally strip and body cavity searched, violently assaulted by MVPD officers, and arrested and charged with drug crimes despite the fact that neither of them was found to have had drugs on his person or was a resident or leaseholder of the premises subject to the search. *See* ECF 1. On February 2, 2019, Plaintiffs filed an amended complaint which was substantially the same as their original complaint with respect to the facts and claims made; the original complaint contained a "John Doe" defendant while the amended complaint apparently eliminated the John Doe defendant and added the full name and badge number of Defendant Fegan. *See* ECF 21.

In their complaint and amended complaint, Plaintiffs averred that their claims "surround[] excessive force, assault and battery, false imprisonment/false arrest, negligent and/or intentional infliction of emotional distress, inadequate supervision and 1983 claim for municipal liability . . .

3

fourth amendment claim for unreasonable search and seizure, sexual abuse and sodomy, and malicious prosecution." *See* ECF 1 and 21.

Defendants answered on February 14, 2019. *See* ECF 22. On April 4, 2019, counsel appeared for Mr. Rutherford; on September 7, 2019, counsel for Mr. Rutherford sought to withdraw and had his motion to withdraw granted on September 25, 2109. *See* ECF 38 and 42, and Minute Entry for 9/25/19. Apart from those five months, and until the undersigned filed a notice of appearance on July 28, 2020, Plaintiffs were unrepresented. Mr. Gallman's highest educational level is 10th grade, while Mr. Rutherford completed his GED.

In addition to proceeding pro se, during much of the pendency of the case, Plaintiffs were incarcerated in various facilities in New York. As is evidenced in the minutes of prior status conferences and orders from this Court, those institutions impeded – and were in some cases actively hostile to – pro se Plaintiffs' prosecution of this case, including by blocking communication between the Plaintiffs, failing to give Plaintiffs access to discovery, and failing to produce Plaintiffs in response to duly issued Court orders. *See, e.g.,* Tr. of July 1, 2019 status conference at 4:5-6:12 (Plaintiff Gallman explaining difficulties he faced in attending status conference by phone from Watertown Correctional Facility); Tr. of March 2, 2020 status conference at 2:19-3:12 (Correctional facility not permitting Plaintiffs to communicate despite court order and despite Defendants' attempt to communicate with facility); *id.* at 8:17-9:2 (correctional institution failed to make Plaintiff Rutherford available for deposition, despite notice).

In addition to these significant obstacles to prosecuting their case, while Defendants have produced some documents in discovery, document discovery is far from complete. For example,

as the Court is aware, no records relating to complaints made against the Defendant Officers, or any of the the Defendant Officers' disciplinary history, have been produced in discovery. In addition, counsel for Plaintiffs only recently received Mount Vernon Police Department's policies and practices and an unredacted version of the search warrant affidavit underlying Plaintiffs' arrests in this case. This unredacted search warrant affidavit contains references to confidential informants by number; no documents relating to the identity of these informants, the specific information they provided, the agreements made by MVPD or benefits provided in exchange for information, or any other information about these confidential informants has been disclosed to Plaintiffs. Indeed, as the complaint, First Amended Complaint, and Proposed Second Amended Complaint make clear, the (mis)use of confidential informants by the Mount Vernon Police Department and the Defendant Officers is central to the claims set forth in this litigation. All of which is to say: substantial discovery is outstanding.[3]

Finally, as this Court knows, following the undersigned's appearance as counsel for the Plaintiffs in late July 2020, discovery was stayed in light of Magistrate Judge Smith's pending retirement. *See* Minute Entry for 7/28/2020. The matter was reassigned to Your Honor on October 15, 2020 and the first status conference with Your Honor was held on December 8, 2020. *See* ECF 89-91. While the parties were working diligently during this period – counsel for the Defendants disclosed previously provided discovery, which counsel for Plaintiffs

---

[3] In addition to the above, Plaintiffs have not taken any depositions of defendants. As we have only recently received the status conference minutes, the parties will need to address whether Plaintiffs' interrogatories were intended to be in lieu of depositions, and may need to seek the Court's intervention if we are unable to reach agreement on this point.

reviewed – the degree of progress that could be obtained was limited by the question of whether Plaintiffs would be able to amend their complaint.

Thus, while the case has been pending for just over two years, the delay in progress was due largely to circumstances outside of the control of these pro se Plaintiffs. This delay is now in the past: Plaintiffs are not only represented by counsel, they are at liberty and able to fully participate in the prosecution of their case, which they are eager to do.

## ARGUMENT

Rule 15(a) of the Federal Rules of Civil Procedure provides that the "court should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2). While it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), courts considering leave to amend begin with "the presumption that the motion should be granted unless good reason exists to deny it." *In re United Brands Co. Sec. Litig.*, No. 85 CIV. 5445 (JFK), 1990 WL 16164, at *2 (S.D.N.Y. Feb. 15, 1990).

While Rule 21 of the Federal Rules of Civil Procedure, which provides that "the court may at any time, on just terms, add or drop a party," governs the addition of parties on the amendment of a complaint, "the consensus in this [district] is that when 'deciding whether to allow joinder, courts adhere to the same standard or liberality afforded to motions to amend [pleadings] under Rule 15." *Hernandez v. BMNY Contracting Corp.*, 17 Civ. 9375 (GBD), 2019 WL 418498, at *1 (S.D.N.Y. Jan. 17, 2019).

The Second Circuit has explained that "district courts should not deny leave unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or

6

futility." *Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000); *see also Block v. First Blood Assocs.*, 988 F.3d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."). The "liberality in granting leave to amend applies to requests to amend a complaint to add new parties." *Brown v. Kelly*, 244 F.R.D. 222, 227 (S.D.N.Y. 2007), *aff'd in part, vacating in part on other grounds*, 609 F.3d 467 (2d Cir. 2010).

In addition to this liberal treatment of motions for leave to amend complaints, "[i]t is well settled that pro se litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 82 (2d Cir. 2001) (internal quotation marks omitted). *Accord Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (internal quotation marks omitted) (district court required to construe pro se pleading liberally and with "special solicitude.")

Finally, the "purpose of the federal rules is to provide for full and fair hearings on the merits. The burden of further discovery and motions is not a satisfactory basis to deny the motion to amend. Such procedural aspects can be regulated and controlled by the trial court." *Middle Atlantic Utilities Co. v. S.M.W. Devel. Corp.*, 392 F.2d 380, 386 (2d Cir. 1968).

Because it will promote the interests of justice without any material delay or undue prejudice to Defendants, and because Plaintiffs have acted in good faith and present viable claims, amendment should be permitted.

**I. Allowing amendment will serve the interests of justice by allowing formerly *pro se* Plaintiffs to fully and fairly litigate their viable claims**

As the Second Circuit has made clear, the policy of liberal construction of *pro se* filings, and the "special solicitude" accorded *pro se* litigants is "driven by the understanding that

"[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Treistman v. Federal Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) *quoting Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

Now represented by counsel, Plaintiffs seek to amend their pro se complaint in order to cure potential defects and to ensure that the operative complaint conforms with the basic pleading requirements of the federal civil procedure rules. To accomplish this, in addition to pleading additional facts and properly pleading claims, Plaintiffs seek to add as defendants certain MVPD officers who were present during the execution of the search warrant and participated in or failed to intervene in the violations of Plaintiffs' rights, or who failed to adequately supervise defendant officers, or who were responsible for the policies and practices of the MVPD. These amendments are consistent with the original and First Amended Complaints, in which Plaintiffs sought to allege both the direct violation of their rights through illegal searches and excessive force, among others, as well as the "inadequate supervision and 1983 claim for municipal liability". That the then-pro se Plaintiffs were unaware of the legal requirements for pleading these claims – including the need to name certain MVPD officers as defendants – should not now preclude them from curing these defects through the Proposed Second Amended Complaint.

Allowance of amendment under these circumstances is not only fair and just, but also serves the goals of conserving judicial resources and allowing for the efficient, expeditious, and focused litigation of meritorious claims. *See, e.g., Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, n.5 ("Where, as here, the original and proposed claims are interrelated, it also serves

judicial efficiency to permit them to be brought in the same action"); *WIXT Television, Inc. v. Meredith Corp.*, 506 F.Supp. 1003, 1010 (N.D.N.Y. 1980) ("To the extent that plaintiff's proposed amended complaint merely elaborates on its original claims, the Court believes that the interest of justice will be served by granting plaintiff's motion to amend. . . Furthermore, this result is in the interest of completeness and judicial economy.")

Nor can there be any claim that the proposed amendments are futile. "The Second Circuit repeatedly has held that if the party moving for leave to amend its pleading 'has at least colorable grounds for relief, justice . . . require[s]'" permitting the amendment. *Intersource, Inc. v. Kidder Peabody & Co.,* No. 90-cv-7389 (PKL), 1992 WL 369918, at *2 (S.D.N.Y. Nov. 20, 1992) (quoting *S.S. Silberblatt, Inc. v. East Harlem Pilot Block Bldg. 1. Hous. Dev. Fund. Co.,* 608 F.2d 28, 42 (2d Cir. 1979). Plaintiffs have pleaded, with specificity, facts that set forth far more than "colorable grounds" for relief.

Indeed, recordings of the execution of the search warrant provided in discovery support Plaintiffs' claims that they were illegally strip and body cavity searched during the execution of the search warrant while news reports include a damning quote from Defendant Fegan, who not only acknowledged that strip and visual body cavity searches were conducted during the execution of the search warrant but that the MVPD have conducted "these kinds of searches at search warrant locations for as long as he could remember."[4] *See* Exh. A at ¶ 84 and n.5.

---

[4] *See* George Joseph*, "*Corruption and Brutality Allegations Against Mount Vernon Detective Are Echoed by Civilian Complaints", GOTHAMIST, March 11, 2020, https://gothamist.com/news/corruption-and-brutality-allegations-against-mount-vernon-detective-are-echoed-civilian-complaints.

Likewise, other documents produced in discovery provide additional support for Plaintiffs' claims, including the police report and the testimony of proposed new defendant officers Brianna Mecca and Peter Vitelli at Plaintiff Gallman's felony hearing. The police report, sworn to by Defendant Antonini, states that Michelle Campbell, the apartment's leaseholder, told Detective Antonini in the kitchen that Plaintiff Gallman gave her drugs and told her to put them in her "groin area." *See* Exh. A at ¶ 55. In contrast, at the felony hearing for Mr. Gallman and Ms. Campbell, proposed new defendant MVPD Officer Brianna Mecca testified under oath that Ms. Campbell never told her that the drugs were Mr. Gallman's or that Mr. Gallman told her to put the drugs into her vagina, where they had been secreted. *Id.* at ¶ 56. Finally, contradicting both the sworn incident report and proposed new defendant Mecca's testimony, proposed new defendant MVPD Detective Peter Vitelli testified under oath at the felony hearing that he did not hear Ms. Campbell make any statements in the kitchen but that he did hear her state to MVPD Officer Mecca that Mr. Gallman told her to put the drugs in her vagina. *Id.*

Plaintiffs' factual allegations taken in the light most favorable to them establish that the defendants illegally strip and body cavity searched them while executing a search warrant; used excessive force when beating them violently; falsely arrested and maliciously prosecuted Plaintiff Rutherford, whose criminal case was dismissed and who did not possess any drugs at the time of his arrest but was nevertheless charged with possessing illegal narcotics; violated the Plaintiffs' right to a fair trial by manufacturing false evidence and withholding exculpatory evidence; failed to intervene to prevent these violations; and that the defendants engaged in a custom, usage, practice, procedure or rule of violating individuals' civil rights in the manner

described by Plaintiffs. Given this, there can be no claim that amendment is futile. *A.V. By Versace v. Gianni Versace, S.P.A.,* 87 F.Supp.2d 281, 298 (S.D.N.Y.2000) (motion to amend should be granted as long as the moving party demonstrates at least colorable grounds for relief). *See also infra* Section IV.

## II. Allowing amendment will not unduly prejudice Defendants.

Although a court may deny leave to amend if the defendant can make a sufficient showing of prejudice, "prejudice alone is insufficient to justify a denial of leave to amend; rather, the necessary showing is '*undue* prejudice to the opposing party.'" *A.V. by Versace, Inc. v. Gianna Versace S.p.A.*, 87 F.Supp. 2d 281, 299 (S.D.N.Y. 2000)(quoting *Foman,* 371 U.S. at 182). When evaluating whether the defendant has met that burden, a court considers whether the amendment would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block*, 988 F.2d at 350. Here, Defendants cannot show undue prejudice because they meet none of the relevant factors.

Significantly, Defendants have been on notice of Plaintiffs' intention to assert the claims now properly articulated in the Proposed Second Amended Complaint since the original complaint was filed in this action. Thus, there has been no change in position or circumstances, or other unfair surprise that might constitute legal prejudice. *See Duling v. Gristede's Operating Corp.*, 265 F.R.D.91, 103 (S.D.N.Y. 2010)("defendants were on notice of the facts underlying [plaintiff's] claims prior to his motion [to amend] and cannot colorably claim prejudice due to unfair surprise"); *Agerbink v. Model Serv. LLC*, 155 F.Supp.3d 448, 455-56 (S.D.N.Y.

2016)(proposed amendment did not unduly prejudice defendants because it arose from and related to the same set of facts and transactions as the claims in the original pleading); *Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir. 1986)("[T]he new claims are merely variations of the original theme . . . arising from the same set of operative facts as the original complaint . . . [and] were forecast by the original . . . allegations."); *cf. Ruotolo*, 514 F.3d at 192 ("Undue prejudice arises when an 'amendment [comes] on the eve of trial and would result in new problems of proof.'") (citation omitted); *Henry v. Murphy*, No. M-82, 2002 WL 24307, at *2 (S.D.N.Y. Jan. 8, 2002) ("prejudice occurs if the opposing party would experience undue difficulty in defending a lawsuit because of a change of tactics or theories on the part of the movant").

With respect to the new proposed defendants, the Defendants have always known precisely which MVPD officers were involved in the execution of the search warrant and which MVPD officers were responsible for supervising the Defendant Officers. While Plaintiffs ideally would have sought to amend their Complaint to include the new MVPD officers soon after the disclosure in discovery of the police reports containing their names, such a failure cannot be deemed dispositive in light of the "special solicitude" accorded *pro se* defendants and the duty of the Court to "make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Treistman*, 470 F.3d at 475. In particular, as described *supra*, Plaintiffs' access to each other and to their discovery materials were limited by the improper actions of the institutions where they were inmates, and Plaintiffs – pro se and lacking sophistication about the pleading requirements of the legal claims they sought to raise – cannot be deemed to have understood the significance of their failure to name all of the defendant officers after receiving discovery. Finally, and perhaps most importantly, Plaintiffs

12

have always named as a defendant the City of Mount Vernon, undermining any prejudice to the defendants by the proposed amendment.

Nor does the mere fact that the proposed amendments may increase the scope of discovery constitute the type of undue prejudice sufficient to outweigh the reasons for granting Plaintiffs' motion for leave to amend. *A.V. by Versace*, 87 F.Supp.2d at 299 ("[a]llegations that an amendment will require the expenditure of additional time, effort, or money do not constitute 'undue prejudice.'"); *U.S. for and on Behalf of Mar. Admin. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir. 1989) (Opposing party's "burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.")

Moreover, for the reasons describe *supra*, the proposed amendment does not significantly delay the proceedings. As this Court has explained in another case involving a motion for leave to amend made more than two years after the commencement of an action, such "delay . . . is much smaller than that which courts have found suspect – generally, delay until the eve of trial." *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 97 (S.D.N.Y. 2010)(citing cases).

For all of these reasons and those that follow, leave to amend the complaint should be granted.

### III. Plaintiffs moved expeditiously for leave to amend, and have acted in good faith.

Counsel for Plaintiffs sought leave to file the instant motion at the earliest practicable time, following entry into the case and review of discovery and other relevant information. While Plaintiffs' motion for leave to amend the complaint comes two years after commencement of the action, it comes while discovery is still pending and well in advance of any dispositive motion practice or trial. As a result, the lapse of time from commencement of the action to the

filing of the instant motion provides no basis to deny the motion to amend the complaint. *See Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993) (Absent a showing of bad faith or undue prejudice, mere delay does not justify denial of leave to amend.) Moreover, Plaintiffs act in good faith in moving to amend the complaint. There can be no claim that the motion to amend is being used for any dilatory or other improper purpose.

## IV. Should the Court grant Plaintiffs' motion to amend, it should be deemed to relate back to the original filing.

Under Federal Rule of Civil Procedure 15, an amendment relates back to the date of the original pleading if it asserts a claim that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

Both the claims that are being clarified in the Second Amended Complaint as well as the sole proposed new claim – a violation of the right to a fair trial – all arise out of the conduct, transaction, or occurrence set out – *or attempted to be set out* – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B) (emphasis added). The clarification/addition of the causes of action in the Proposed Second Amended Complaint are noncontroversial applications of Rule 15.

When the amendment adds new defendants, it will relate back only if the new parties "received such notice of the action that [they] will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity." *Id.* 15(c)(1)(C). Under New York State law, filing a complaint against a "John Doe" defendant because of ignorance of the proper party's identity is a "mistake in identity." *See DaCosta*, 296 F.Supp.3d at 606, *citing Kirk v. University OB-GYN Assoc.*, 104 A.D.3d 1192, 960 N.Y.S.2d 793 (N.Y. App. Div. 2013).

"Courts must examine the 'controlling *body* of limitations law,' and apply state law if it provides 'a more forgiving principle of relation back that the one provided by' Rule 15(c)." *Strada v. City of New York*, No. 11 Civ. 5735 (MKB), 2014 WL 3490306, at *5 (E.D.N.Y. July 11, 2014)(*quoting Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013)). Because New York law provides more forgiving principles of relation back, *see Hogan*, 738 F.3d 509, New York law governs here.

C.P.L.R. § 203 provides that claims against one defendant may relate back to claims asserted against another if (1) both claims arose out of the same conduct, transaction, or occurrence, (2) the new party is 'united in interest' with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (3) the new party knew or should have known that, but for a[]. . . mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well. *Sosa v. Bustos*, No. 17 Civ. 417(ER) (*quoting DaCosta v. City of New York*, 296 F.Supp.3d 569, 585 (E.D.N.Y. 2017)).

Each of the elements are easily met here. The claims arise out of the same conduct, transaction, or occurrence. The new parties are "united in interest" with the original defendants City of Mount Vernon and the Defendant Officers Antonini, Puff, and Fegan. *See DaCosta*, 296 F.Supp.3d at 586 (finding that indemnification obligation of a city employer to its police officer employee creates the necessary "unity of interest" under CPLR 203). *See also Strada*, 2014 WL 3490306, at *7 (same and citing cases).

Finally, the third prong of CPLR 203's test is also met here. "Most federal district courts have held that the term 'mistake' in CPLR 203 should be given the same meaning as the term is

15

given in Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure." *DaCosta*, 296 F.Supp.3d at 587. In explaining what constitutes a "mistake" for purposes of Rule 15(c), the Supreme Court has held:

> That a plaintiff knows of a party's existence does not preclude [him] from making a mistake with respect to that party's identity. A plaintiff may know that a prospective defendant – call him party A – exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise to [his] claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties. The only question under Rule 15(c)(1)(C)(ii), then, is whether party A knew or should have known that, absent some mistake, the action would have been brought against him.

*Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 549 (2010). In other words, "a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and [he] may mistakenly choose to sue a different defendant based on that misimpression." *Id.* "That kind of deliberate but mistaken choice," however, "does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied." *Id.* Indeed, "[c]ourts often allow plaintiffs (and especially pro se plaintiffs) to amend if their initial claim was legally insufficient because they named the wrong public official or government entity based on a misunderstanding of the legal prerequisites for bringing suit against particular government defendants." *Berry v. Village of Millbrook*, No. 09-CV-4234 (KMK), 2010 WL 3932289, *5 (S.D.N.Y. Sept. 29, 2010) *citing Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 35 (2d Cir. 1996).

In evaluating the proposed amendment of a complaint to add new defendants, the primary consideration is "whether the *defendant* could have reasonably concluded that the failure to sue within the limitations period meant that there was no intent to sue that person at all and that the matter had been laid to rest as far as [it was] concerned." *Buran v. Coupal*, 87 N.Y.2d 173, 181 (1995) (internal quotation marks and citation omitted).

Such a conclusion is not warranted in this case, where the proposed new defendants were aware of, participated in, failed to intervene in, and/or did not stop as they were required to do, the alleged civil rights violations. Moreover, on information and belief, the Quinn Law Firm, which currently represents all defendants including the City of Mount Vernon, represents or would represent all MVPD officers. "Under the constructive notice doctrine, the court can impute knowledge of a lawsuit to a new defendant government official through his attorney, when the attorney also represented the officials originally sued, so long as there is some showing that the attorney[] knew that the additional defendants would be added to the existing suit." *Muhammad v. Pico*, No. 02-CV-1052, 2003 WL 21792158, at *20 (S.D.N.Y. Aug. 5, 2003) (internal quotation marks omitted). Here, the original complaint included "John Doe" defendants, and interrogatories were submitted to one of the proposed new defendants (Brianna Mecca). As this Court recognized, "[t]he constructive notice doctrine is based on the theory that the newly added defendant is not prejudiced by the lack of notice if his attorney has already begun preparing a defense for the named defendant during the limitations period." *Velez v. Fogarty*, No. 06-CV-13186, 2008 WL 5062601, at *5 (S.D.N.Y. Nov. 20, 2008). *Accord Berry v. Village of Millbrook*, 2010 WL 3932289 at *5, n.6.

Nor can defendants claim that the proposed new defendants were omitted from the Original Complaint or the First Amended Complaint to gain some kind of "tactical advantage" or that the Plaintiffs otherwise acted in bad faith. *See, e.g., Buran*, 87 N.Y.2d at 181. In addition to the pro se Plaintiffs understandable lack of knowledge about including these proposed new defendants, Plaintiffs affirmatively did name the City of Mount Vernon. Thus, there was no tactical advantage to be gained by excluding the proposed new defendants. *Compare Sosa v. Bustos*, 2020 WL 1940550 at *7-*8.

For all of these reasons, to the extent the Court accepts the Proposed Second Amended Complaint, it should be deemed to relate back to the Plaintiffs' original filing in this case.

## CONCLUSION

Because allowing amendment of the complaint serves the interests of justice and will not result in any undue prejudice to Defendants or delay to the proceedings, Plaintiffs respectfully request that the Court grant them leave to amend.

Dated: January 11, 2021

                                    LOEVY & LOEVY

                                    By: /s/ Karen A. Newirth

Tara Thompson (admitted pro hac vice)
LOEVY & LOEVY
311 N. Aberdeen Street
Third Floor
Chicago, IL 60607
(312)789-4955
tara@loevy.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 11, 2021, the foregoing was electronically filed with the Court's CM/ECF Filing System, which will send a Notice of Electronic Filing to all parties of record who are registered with CM/ECF.

By: /s/ Karen A. Newirth