UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

RAYVON RUTHERFORD and
REGINALD GALLMAN,

                    Plaintiffs,

          -against-

CITY OF MOUNT VERNON; P.O. ROBERT
G. PUFF, Badge No. 2154; P.O. BRIANNA
M. MECCA, Badge No. 2177; P.O. PETER
VITELLI, Shield No. 2055; DET. CAMILO R.
ANTONINI, Badge No. D111; DET. SGT.
SEAN J. FEGAN, Badge No. DS001; and P.O.
JOSEPH B. VALENTE, Shield No. 2059,

                    Defendants.
-------------------------------------------------------------x

**OPINION AND ORDER**

18 Civ. 10706 (AEK)

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

Plaintiffs Rayvon Rutherford and Reginald Gallman bring this action against the City of
Mount Vernon ("Mount Vernon"), P.O. Brianna M. Mecca, Det. Camilo R. Antonini, Det. Sgt.
Sean J. Fegan, P.O. Joseph B. Valente, P.O. Robert G. Puff, and P.O. Peter Vitelli (the
"Individual Defendants," and collectively with Mount Vernon, the "Defendants"), asserting
various claims pursuant to 42 U.S.C. § 1983. *See generally* ECF No. 115 (Second Amended
Complaint or "SAC"); ECF No. 197 ("Summary Judgment Opinion and Order" or "Op.");
*Rutherford v. City of Mount Vernon*, --- F. Supp. 3d ---, 2023 WL 6395375 (S.D.N.Y. Sept. 29,
2023). A trial in this matter is scheduled to begin on January 22, 2024. Currently before the
Court is Defendants' motion to bifurcate the trial into two separate proceedings: one for all
remaining claims against the Individual Defendants, and one for Plaintiffs' municipal liability
claim against Mount Vernon pursuant to *Monell v. Department of Social Services of City of New*

*York*, 436 U.S. 658 (1978).  *See* ECF Nos. 201 (Notice of Motion), 202 (Defendants'

Memorandum or "Defs.' Mem.").  For the reasons that follow, Defendants' motion is DENIED.

## BACKGROUND

The factual and procedural background of this matter is set forth at length in the Court's

September 29, 2023 Summary Judgment Opinion and Order, which granted in part and denied in

part Defendants' motion for partial summary judgment.  Familiarity with that decision is

presumed, and what follows is a brief recitation of the facts and procedural history relevant for

purposes of deciding the current motion to bifurcate.

On the evening of March 31, 2017, the Individual Defendants—all of whom were

employed by the Mount Vernon Police Department ("MVPD")—executed a search warrant at a

residential apartment located at 145 South 1st Avenue in Mount Vernon, New York.  *See* Op. at

5.  Plaintiffs were both present in the apartment at the time of the search, and following the

search, were arrested and charged with criminal possession of a controlled substance in the third

degree, pursuant to N.Y. Penal Law § 220.16(1).  *See* Op. at 5, 11.  Plaintiffs have alleged that

during the course of the search, certain Individual Defendants subjected them to excessive uses

of force and unconstitutional strip and/or body cavity searches, and/or failed to intervene to

prevent these violations of their rights.  SAC ¶¶ 139-49, 167-72.  Mr. Rutherford also has

asserted claims for false arrest and malicious prosecution.  *See* SAC ¶¶ 150-60.

In the Summary Judgment Opinion and Order, the Court dismissed certain claims but

otherwise denied Defendants' motion with respect to Plaintiffs' claims against the Individual

Defendants.[1]  *See* Op. at 24-46, 63-65.  Additionally, and importantly for purposes of the instant

motion, the Court denied Defendants' motion as to the *Monell* claim brought against Mount

Vernon, holding that Plaintiffs could proceed to trial on two separate theories of municipal

liability: (1) that the MVPD had a widespread practice of conducting unreasonable strip and/or

body cavity searches; and (2) that the MVPD failed to train, investigate, discipline, and supervise

its employees with respect to conducting reasonable strip and/or body cavity searches.  Op. at

46-63; *see* ECF No. 207 ("Proposed Joint Pretrial Order") at 3.

During a conference held after the Court issued the Summary Judgment Opinion and

Order, Defendants informed the Court of their intent to request that the trial be bifurcated into

two proceedings, with the claims against the Individual Defendants tried first, followed by a

separate proceeding as to the *Monell* claim against Mount Vernon.  The Court directed the

parties to brief the issue.  On November 3, 2023, Defendants submitted their motion to bifurcate,

*see* Defs.' Mem.; Plaintiffs submitted their opposition to the motion on December 1, 2023, ECF

No. 204 ("Pls.' Opp'n").

## LEGAL STANDARD

Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, "[f]or convenience, to

avoid prejudice, or to expedite and economize, the court may order a separate trial of one or

more separate issues, claims, crossclaims, counterclaims, or third-party claims."  Fed. R. Civ. P.

42(b); *see Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999).  In deciding

whether to bifurcate proceedings, courts generally consider "whether bifurcation is needed to

---

[1] On October 11, 2022, following the completion of discovery, the parties entered into a
stipulation dismissing certain claims and parties from the action.  ECF No. 174.  As part of this
stipulation, Defendants agreed not to move for summary judgment with respect to Plaintiffs'
claims that they were subjected to unlawful strip and/or body cavity searches, or Plaintiffs'
excessive force claims.  *Id.*

avoid or minimize prejudice, whether it will produce economies in the trial of the matter, and whether bifurcation will lessen or eliminate the likelihood of juror confusion." *Crown Cork & Seal Co., Inc. Master Ret. Tr. v. Credit Suisse First Boston Corp.*, 288 F.R.D. 335, 337 (S.D.N.Y. 2013) (quotation marks omitted); *see also Amato*, 170 F.3d at 316 ("[B]ifurcation may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue, or where one party will be prejudiced by evidence presented against another party." (cleaned up)).

"Rule 42(b) is sweeping in its terms and allows the district court, in its discretion, to grant a separate trial of any kind of issue in any kind of case." *Chevron Corp. v. Donziger*, 800 F. Supp. 2d 484, 491 (S.D.N.Y. 2011) (quotation marks omitted). "Cases in which bifurcation has been granted or denied can be informative but are not decisive in a Rule 42(b) analysis, since '[b]y its very nature, discretion yields differing outcomes.'" *Mensler v. Wal-Mart Trans., LLC*, No. 13-cv-6901 (JCM), 2015 WL 7573236, at *3 (S.D.N.Y. Nov. 24, 2015) (quoting *Amato*, 170 F.3d at 316). Moreover, "[a]lthough a trial court has broad discretion to grant separate trials under appropriate circumstances, 'for reasons of efficient judicial administration courts favor having only one trial whenever possible.'" *Small v. City of New York*, No. 09-cv-1912 (RA), 2022 WL 1261739, at *12 (S.D.N.Y. Apr. 28, 2022) (quoting *Buscemi v. Pepsico, Inc.*, 736 F. Supp. 1267, 1271 (S.D.N.Y. 1990)); *see also Martinez v. Robinson*, No. 99-cv-11911 (DAB) (JCF), 2002 WL 424680, at *2 (S.D.N.Y. Mar. 19, 2002) ("the presumption is that all claims in a case will be resolved in a single trial, and it is only in exceptional circumstances where there are special and persuasive reasons for departing from this practice that distinct causes of action asserted in the same case may be made the subject of separate trials" (quotation marks omitted)).

The party seeking bifurcation "bears the burden of establishing that bifurcation is warranted."  *Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001).

## DISCUSSION

In support of their motion for bifurcation, Defendants make two overarching arguments: first, that the Individual Defendants will be prejudiced by the evidence Plaintiffs may seek to introduce in support of their *Monell* claim, and second, that trying the claims together would be inefficient and wasteful of the time and resources of everyone involved.  The Court addresses each argument in turn.

### A.      Risk of Undue Prejudice to Defendants

Defendants maintain that trying this case in a single proceeding would prejudice the Individual Defendants, because evidence that would be introduced only in connection with the *Monell* claim could be improperly and unfairly considered by the jury in assessing Plaintiffs' claims against the Individual Defendants.  Defs.' Mem. at 5-7.  While the Court acknowledges that certain evidence has the potential to create some prejudice for the Individual Defendants, Defendants have overstated the risk of prejudice, and have understated the degree to which such prejudice can be remedied by carefully constructed jury instructions.

As an initial matter, Defendants' prejudice concerns are tempered by the fact that a substantial portion of the evidence Plaintiffs likely will seek to introduce in support of their *Monell* claim is also relevant to Plaintiffs' claims against the Individual Defendants.  For example, in denying Defendants' motion for summary judgment as to the *Monell* claim, the Court referred to (1) testimony by the Individual Defendants regarding their understanding of the authority to conduct strip and/or body cavity searches, training on how to conduct such searches, and experience conducting these searches; (2) MVPD policies and procedures for conducting

5

strip and body cavity searches; and (3) the Individual Defendants' training records.  Op. at 50-63.

All of this evidence is also relevant to Plaintiffs' claims that the Individual Defendants subjected

Plaintiffs to unconstitutional searches on March 31, 2017.

First, the testimony of the Individual Defendants as to their training, experience, and

understanding of the circumstances in which strip and/or body cavity searches are permissible is

relevant to the question of whether Plaintiffs were subjected to unconstitutional searches.

Defendants have denied that Mr. Rutherford was strip searched on that evening.  *See* Proposed

Joint Pretrial Order at 3 ("Plaintiffs cannot prove by a preponderance of the evidence that . . .

Plaintiff Rutherford was strip searched at all").  To attempt to demonstrate that Mr. Rutherford

was in fact strip searched, Plaintiffs may seek to introduce evidence tending to show that the

Individual Defendants would have strip searched Mr. Rutherford under the circumstances of the

March 31, 2017 apartment search in accordance with regular prior practice and conduct.  *See*

*Stephen v. Hanley*, No. 03-cv-6226 (KAM) (LB), 2009 WL 1471180, at *14 (E.D.N.Y. May 21,

2009) (evidence that defendant officers conducted searches in manner similar to that alleged by

the plaintiff "constitute[s] evidence of a pattern of relevant conduct"); *Ismail v. Cohen*, 706 F.

Supp. 243, 252-53 (S.D.N.Y. 1989) (holding evidence that defendant police officer had

previously engaged in incident of excessive force similar to that alleged by the plaintiff

amounted to "specific acts of other misconduct [that] may be introduced as extrinsic evidence

under Rule 404(b) to prove . . . pattern of relevant conduct"), *aff'd*, 899 F.2d 183, 188-89 (2d

Cir. 1990).

Second, MVPD policies and evidence regarding Defendants' training are probative of the

reasonableness of the Individual Defendants' actions on March 31, 2017.  *See Sarnicola v. Cnty.*

*of Westchester*, 229 F. Supp. 2d 259, 274 (S.D.N.Y. 2002) (assessing reasonableness of

particular strip search with reference to whether the search comported with police department policy); *Cotto v. City of Middletown*, 158 F. Supp. 3d 67, 89 (D. Conn. 2016) (explaining that officers' training was relevant for purposes of determining punitive damages); *cf. Brown v. City of New York*, 798 F.3d 94, 101-03 & n.11 (2d Cir. 2015) (considering police department policy and guidance in reasonableness analysis of excessive force claim).  Evidence of training and policy is particularly relevant where, as here, the defendants intend to argue that they are protected by qualified immunity.  *See* Proposed Joint Pretrial Order at 4 ("The Individual Defendants raise the defense of qualified immunity on all claims as reasonable officers in the same situation could disagree as to whether their actions violated Plaintiffs' constitutional rights."); *Murphy v. Hughson*, 82 F.4th 177, 185-88 (2d Cir. 2023) (assessing the reasonableness of officers' actions conducting strip searches in jail facility by considering, among other things, jail policy); *Sarnicola*, 229 F. Supp. 2d at 275 (denying qualified immunity where "[a]ny rational jury would find that the [defendant officer's] order, which overtly violated written [c]ounty policy, was so flawed that no reasonable officer would have made a similar choice" (quotation marks omitted)).[2]

Defendants particularly highlight the risk that the admission of evidence of complaints regarding strip and/or body cavity searches conducted by MVPD personnel other than the Individual Defendants, in situations that did not involve Plaintiffs, would confuse the jury and prejudice the Individual Defendants.  *See* Defs.' Mem. at 5-6.  Defendants are correct that such

---

[2] While the Court has considered the potential role of certain categories of evidence in deciding the instant motion, the Court expects to receive motions *in limine* with complete briefing on various evidentiary issues, including, perhaps, some of the issues addressed in this Opinion and Order.  Accordingly, this Opinion and Order does not amount to, and should not be treated as, a definitive ruling as to these matters and should not be relied on for that purpose. The Court will issue final rulings on these issues to the extent they are presented in the parties' motions *in limine* and/or at trial.

evidence would be an important part of proving municipal liability against Mount Vernon, but would not be admissible in a bifurcated proceeding against the Individual Defendants if the *Monell* claim were to be heard separately.  As numerous courts have found, however, prejudice—even potentially "substantial prejudice"—to the Individual Defendants from the introduction of such evidence can be "adequately mitigated through the ubiquitous and efficacious means of limiting instructions [and] jury charges[.]"  *Schoolcraft v. City of New York*, 133 F. Supp. 3d 563, 571 (S.D.N.Y. 2015); *see also, e.g.*, *Gordon Springs v. City of New York*, No. 17-cv-451 (AJN), 2019 WL 10892065, at *2 (S.D.N.Y. Aug. 21, 2019) (quoting *Schoolcraft*, 133 F. Supp. 3d at 571); *Jeanty v. Cnty. of Orange*, 379 F. Supp. 2d 533, 549-50 (S.D.N.Y. 2005) (collecting cases).  Courts regularly task juries with reviewing different evidence for, and applying different standards to, different parties, and with proper instructions, a jury in this case will be able to perform this function.  *See, e.g.*, *Fleming v. City of New York*, No. 18-cv-4866 (GBD) (JW), 2023 WL 1861223, at *2-3 (S.D.N.Y. Feb. 9, 2023) (denying motion to bifurcate discovery in case with *Monell* claim and noting court was "unconvinced" by defendant's argument that jurors would be confused by having to "sift through distinct material facts and understand different standards of proof for each claim"); *Small*, 2022 WL 1261739, at *13 ("Cases brought against both individual and institutional or corporate defendants are routinely tried at the same time, and juries are frequently tasked with applying different standards to different parties.  Any potential prejudice to the City could have been, and was, mitigated by appropriate jury instructions.").  "The Court has confidence in the jury's ability" to keep the Section 1983 claims against the Individual Defendants and *Monell* claim against Mount Vernon separate, and to "distinguish between [Mount Vernon's] behavior and that of the Individual Defendants."  *Gordon Springs*, 2019 WL 10892065, at *2.

For all of these reasons, Defendants have failed to carry their burden to show that the risk of prejudice to the Individual Defendants warrants bifurcation of the trial in this matter.

**B.    Convenience and Efficiency**

Defendants also argue that bifurcation would lead to greater convenience and promote efficiency.  *See* Defs.' Mem. at 7-10.  The Court disagrees.

In light of the significant overlap between the evidence Plaintiffs may offer to support their claims against the Individual Defendants and the evidence they may offer to support their *Monell* claim against Mount Vernon, trying both sets of claims in one proceeding will likely only add one additional day to the trial schedule.  *See* Pls.' Opp'n at 12; Proposed Joint Pretrial Order at 5.  Only a handful of the nearly two dozen potential trial witnesses identified by the parties would testify exclusively regarding the *Monell* claim, *see* Proposed Joint Pretrial Order at 8-15, and for the reasons addressed by the Court at the December 13, 2023 hearing, some of those witnesses may not be appropriate witnesses even as to the municipal liability claim.  In contrast, a second trial to address municipal liability to be held weeks or months later—after the Court has received post-trial briefing and ruled on Defendants' qualified immunity arguments—before a new jury, would be a colossally inefficient, burdensome, and time-consuming endeavor. Defendants' alternate suggestion—referenced at the December 13, 2023 hearing—to simply add on a *Monell*-specific trial day or days with the same jury immediately after the jury renders a verdict as to the claims against the Individual Defendants also is not feasible.  At least some witnesses who testified in a narrowed manner in the first phase of the trial would have to testify a second time as to the municipal liability claim, and jurors, counsel, and the Court would have to sit through multiple, inefficient rounds of jury charges and opening and closing arguments, all of which could much more conveniently and economically be accomplished in a single proceeding.

*See, e.g.*, *Gordon Springs*, 2019 WL 10892065, at *2 (denying motion for bifurcation where additional claim to be bifurcated "would take only 'a matter of days'" to try and "holding two separate trials in the same action would inconvenience the [c]ourt, [p]laintiff, and witnesses"); *Schoolcraft*, 133 F. Supp. 3d at 571 ("Plaintiff convincingly argues that there will be significant overlap between the evidence he will offer in support of his *Monell* claims and in support of the other claims that survived summary judgment.  Consequently, efficiency considerations do not favor bifurcation." (citation omitted)).

   Of course, it is possible that the jury will not have to decide the *Monell* claim.  As Plaintiffs acknowledged at the December 13, 2023 hearing, to the extent the jury finds each of the Individual Defendants not liable as to Plaintiffs' strip and/or body cavity search claims, then the jury will not be required to reach the question of municipal liability as to Mount Vernon.  In support of their motion for bifurcation, Defendants additionally contend that even if the jury finds one or more of the Individual Defendants liable on Plaintiffs' strip and/or body cavity search claims, it still would be "unnecessary" to get to a verdict as to the *Monell* claim.  Defs.' Mem. at 7-8.  This argument is contrary to Second Circuit precedent and fails to recognize the significance of municipal liability claims.

   Defendants maintain that because Mount Vernon and the Individual Defendants would be jointly and severally liable for any damages if the jury were to return a verdict in favor of Plaintiffs as to their strip and/or body cavity search claims against the Individual Defendants, bringing separate claims against the Individual Defendants and Mount Vernon is a purely "academic" exercise.  *Id.* at 8.  This is simply not correct.  In *Amato*, a district court had granted the defendants' motion to bifurcate individual Section 1983 and *Monell* claims, and after holding a trial on the claims against the individual officers—at which the officers were found liable and

the plaintiff was awarded nominal damages—the district court dismissed the plaintiff's *Monell* claim without explanation.  170 F.3d at 316-17.  The *Amato* panel inferred that the district court had "agreed with the City defendants' argument as to the futility of proceeding when only nominal damages were at stake."  *Id.* at 317.  The *Amato* panel then vacated the dismissal of the *Monell* claim, finding that the plaintiff's "interest in obtaining a judgment against the City defendants" was not "fully vindicated when [the plaintiff] obtained a verdict against some of the individuals . . . ."  *Id.* at 319.  Indeed, "a litigant is entitled to seek symbolic vindication from the municipality as well as the individual official for violation of constitutional rights."  *Id*. at 321; *see also id.* at 317 ("[W]hile the monetary value of a nominal damage award must, by definition, be negligible, its value can be of great significance to the litigant and to society.").  The same logic applies here.  Even if Plaintiffs prevail against the Individual Defendants and would not be able to recover any additional sums if they then also prevailed over Mount Vernon on their *Monell* claim, Plaintiffs have the right to seek "symbolic vindication" against Mount Vernon at trial.  Accordingly, to the extent Defendants believe that bifurcation is the most convenient and efficient approach to this litigation because the *Monell* claim would be "unnecessary" regardless of the outcome of the case against the Individual Defendants, that argument is rejected.

In sum, Defendants have failed to demonstrate that it would be more convenient or efficient to conduct separate proceedings for the claims against the Individual Defendants and the *Monell* claim against Mount Vernon.  Rather, the Court finds that such an approach would be *more* time-consuming, burdensome, and inefficient for all participants.

*     *     *     *     *

Bifurcation is permitted, within the discretion of the court, "[f]or convenience, to avoid prejudice, or to expedite and economize . . . ."  Fed. R. Civ. P. 42(b).  On balance, however,

Defendants have not established that any of the Rule 42(b) considerations favor bifurcation in this case.  Accordingly, all remaining claims in this matter will be adjudicated as part of a single trial.

## CONCLUSION

For the foregoing reasons, Defendants' motion to bifurcate the trial in this action (ECF No. 201) is DENIED.

Dated: December 15, 2023
      White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge